**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Rasool Kashkool,               )     No. CV-07-190-PHX-LOA
                            )
         Plaintiff,      )     **ORDER**
                            )
vs.                        )
                            )
Michael Chertoff, et al.,    )
                            )
         Defendants.    )
_____)

This matter arises on Plaintiff's Motion for Summary Judgment. (docket # 27)  Defendants have filed a "Response in Opposition to Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment/Motion to Dismiss." (docket # 30)  The parties have previously consented to magistrate-judge jurisdiction pursuant to Title 28 U.S.C. 636(c)(1) for all purposes, including trial and final entry of judgment. (docket # 18)  For the reasons set forth below, this Court concludes that it has jurisdiction over Plaintiff's Complaint and that Plaintiff is entitled to summary judgment as a matter of law.

**I. Background**

On January 26, 2007, Plaintiff filed a Petition for Writ of Mandamus against Michael Chertoff, Secretary of the Department of Homeland Security, and Robert J. Okin, District Director of the Phoenix District Office of the Bureau of Citizenship and Immigration Services. (docket # 1 at 1-2)  Plaintiff seeks an order compelling Defendants to adjudicate his pending application for adjustment of status to permanent resident ("I-

485" application).  (docket # 1)  Plaintiff asserts that this District Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1361 (Mandamus Act), 28 U.S.C. § 1651 (the All Writs Act), and 5 U.S.C. § 701 (Administrative Procedure Act). (docket # 1)

Plaintiff is a native and citizen of Iraq who was admitted to the United States as a refugee pursuant to § 207 of the Immigration and Nationality Act ("INA") on May 3, 2001 in Los Angeles, California.  (docket # 27 at 1; Harrell Decl. ¶ 12[1])  He has resided in the United States since that date.  On July 1, 2002, Plaintiff filed an I-485 application to adjust to legal permanent resident status with the United States Bureau of Citizenship and Immigration Services ("USCIS" or the "agency").  (docket # 27-3)  When an individual applies to USCIS for adjustment of status to lawful permanent resident, the agency conducts several forms of security and background checks to ensure that an alien is eligible for the benefit sought and that the applicant does not pose a risk to national security or public safety.  (docket # 30, Harrell Decl. ¶¶ 3, 4)  The background checks include (1) a Federal Bureau of Investigation ("FBI") fingerprint check, (2) a check against the Interagency Border Inspection System watch list, and (3) an FBI name check. (docket # 30, Harrell Decl. ¶4, fact sheet)  Plaintiff "has not been interviewed concerning his eligibility for the benefit sought."  (Harrell Decl. ¶ 12)  Plaintiff has received no decision on his I-485 application which remains unadjudicated.  (*Id.*); (docket # 27-3)

The USCIS has submitted a name check for Plaintiff to the FBI.  (Cannon Decl. ¶ 22[2])  A name check is a computerized search of an applicant's name against FBI

---

[1]    "Harrell Decl." refers to the declaration of Charles B. Harrell, USCIS's Supervisory District Adjudications Officer in Phoenix, Arizona, attached to Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment.  (docket # 30-5)

[2] "Cannon Decl." refers to the declaration of Michael A. Cannon attached to Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment.  (docket # 30-3)

investigative databases. (Cannon Decl. ¶ 11)  The FBI's National Name Check Program received USCIS's first request for a name check on Plaintiff on or about December 20, 2002. (*Id.*)  According to the Declaration of Michael Cannon, Section Chief of the National Name Check Program Section at Headquarters of the FBI in Washington, D.C., the FBI performed its check and forwarded the results to the USCIS in Washington, D.C. (Cannon Decl. ¶ 22)  The FBI received a second name check request from USCIS for Plaintiff on or about February 12, 2004.  (*Id.* at ¶ 23)  The second name check has not been completed.  (*Id.*)  The USCIS cannot adjudicate Plaintiff's pending I-485 application until all security checks, including the name check, are completed.  (docket # 30 at 7; Harrell Decl. ¶ 3, 8)  Defendants' main justification for the delay in processing Plaintiff's I-485 application is that USCIS has not yet received the results of Plaintiff's FBI name check.  (docket # 30 at 2, 7)

## II.  Summary of Arguments

### A.  Defendants' Arguments

Defendants argue that the Court should dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject-matter jurisdiction because Title 8 U.S.C. § 1252(a)(2)(B)(ii) divests the court of subject matter jurisdiction over Plaintiff's claims.[3]

---

[3]  Defendants also suggest that Plaintiff's failure to name the Federal Bureau of Investigation ("FBI"), the agency responsible for conducting name checks, as a defendant is fatal to Plaintiff's suit.  (docket # 30 at 2) The Court disagrees.  The FBI's involvement in adjudicating I-485 applications arises not by statute or duty otherwise imposed by law, but by a contract between USCIS and the FBI.  *Konchitsky v. Chertoff*, No. C-07-00294-RMW, 2007 WL 2070325, * 6 (N.D.Cal., July 13, 2007).  In view of that arrangement, FBI may lack a clear duty to Plaintiff, and thus, this Court lacks mandamus jurisdiction over the FBI.  *Eldeeb v. Chertoff*, No. 8:07-CV-236-T-17EAJ, 2007 WL 2209231,* 21-22 (E.D.Fla., July 30, 2007).  Similarly, absent any legal duty owed to Plaintiff that has been violated, Plaintiff could not state a claim against the FBI under the APA.  *Konchitsk*y, 2007 WL 2070325, * 6 (noting that "courts squarely addressing the issue of whether they have jurisdiction to compel the FBI to perform name checks in connection with adjustment of status petitions have overwhelmingly concluded that they do not.")  Thus, Plaintiff prudently chose not to name FBI as a defendant.  The Court notes, however, that the USCIS has the authority to

1    (docket # 30 at 5)  Defendants further argue that the Court should dismiss Plaintiff's

2    claims under both the Mandamus Act, 28 U.S.C. § 1361, and the Administrative

3    Procedures Act ("APA"), 5 U.S.C. § 701 *et seq*., for failure to state a claim. (dockets # 30

4    at 2, docket # 1)

5                              **B.  Plaintiff's Arguments**

6               Plaintiff argues that the Court has subject-matter jurisdiction over his claims

7    pursuant to the Mandamus Act, 28 U.S.C. § 1361; the All Writs Act, 28 U.S.C. § 1651(a);

8    the federal question statute, 28 U.S.C. § 1331; and the Administrative Procedures Act

9    ("APA"), 5 U.S.C. § 701, *et seq*.  (docket # 1)  Plaintiff asserts that the Mandamus Act

10   provides jurisdiction over any action in the nature of mandamus to compel an officer or

11   employee of the United States to perform a duty owed to Plaintiff.  (docket # 1)  Plaintiff

12   also asserts that, pursuant to the APA, a court may "compel agency action unlawfully

13   withheld or unreasonably delayed."  (docket # 1 at 3); 5 U.S.C. § 701, *et seq*.

14               Plaintiff moves for summary judgment on the ground that there is no

15   genuine issue of material fact that Defendants have failed to adjudicate Plaintiff's I-485

16   application within a reasonable period of time.  (docket # 27)

17   **III.  Subject Matter Jurisdiction**

18               Defendants move for dismissal of this action for lack of subject-matter

19   jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).  Pursuant to Fed.R.Civ.P. 12(b)(1), the

20   court must dismiss an action if the court lacks jurisdiction over the subject matter of the

21   suit.  Fed.R.Civ.P. 12(b)(1).  The party invoking federal jurisdiction bears the burden of

22   establishing that such jurisdiction exists.  *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir.

23   1986).  The Court presumes a lack of jurisdiction until the party asserting federal

24   jurisdiction proves otherwise.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S.

25

26   _____

27   direct the FBI to conduct a name check on an expedited basis.  (docket # 30, Cannon Decl.
     ¶ 19)(stating that "the FBI generally processes name checks on a 'first-in, first-out' basis

28   unless USCIS directs that a particular name check be expedited.")

375, 377 (1994); *Stock West*, *Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989)(noting that a federal court is presumed to lack subject matter jurisdiction until otherwise established); *Thornhill Publishing Co. v. General Tel. & Electronics Corp*., 594 F.2d 730, 733 (9th Cir. 1979).

Plaintiff invokes this Court's jurisdiction on several bases: 28 U.S.C. § 1331(granting "federal question" jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States") in combination with the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-706; and the Mandamus Act, 28 U.S.C. § 1361, in conjunction with the All Writs Act, 28 U.S.C. § 1651(a) (stating that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their  respective jurisdictions and agreeable to the usages and principles of law."  (docket # 1 at 1)

## A.  Federal Question Jurisdiction and the APA

Federal-question jurisdiction must be supported by an underlying question of federal law.  *Adelt v. Richmond School Dist*., 439 F.2d 718, 718 (9th Cir. 1971) (affirming dismissal on jurisdictional grounds where "the asserted errors are not of Constitutional dimension and present no federal question.")

The general grant of jurisdiction to determine federal questions under 28 U.S.C. § 1331, in conjunction with the APA, is sufficient to confer jurisdiction over a challenge to federal agency action. *See, Bowen v. Massachusetts*, 487 U.S. 879, 891 n. 16 (1988) (stating that "it is common ground that if review is proper under the APA, [there is] jurisdiction under 28 U.S.C. § 1331."); *Gallo Cattle Co. v. U.S. Dept. of Agriculture*, 159 F.3d 1194, 1198 (9th Cir. 1998)(stating that "while beyond dispute that the APA does not provide an independent basis for subject matter jurisdiction, a federal court has jurisdiction pursuant to 28 U.S.C. § 1331 over challenges to agency action as claims arising under federal law, unless a statute expressly precludes review."); *Proyecto San Pablo v. INS*, 189 F.3d 1130, 1136 n. 5 (9th Cir. 1999) (same).  Thus, as discussed in

1   Section IV.B, *infra*, because Plaintiff states a claim under the APA, this Court has
2   federal-question jurisdiction in conjunction with the APA.
3             **B.  Mandamus Act**
4             The Mandamus Act vests a district court with original jurisdiction over
5   "any action in the nature of mandamus to compel an officer or employee of the United
6   States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.
7   Relief under the mandamus act and the APA are virtually equivalent when a petitioner
8   seeks to compel an agency to act on a nondiscretionary duty. *Independence Mining Co.,*
9   *Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997).  The Mandamus Act, however, "is
10  intended to provide a remedy only if the plaintiff has exhausted all other avenues of relief
11  and only if the defendant owes him a nondiscretionary duty."  *Heckler v. Ringer*, 466 U.S.
12  602, 603-04 (1984).  As discussed in Section IV.A, *infra*,  because Plaintiff can proceed
13  under the Mandamus Act, this Court has mandamus jurisdiction.[4]
14            Thus, contrary to Defendants' assertions, this Court has subject-matter
15  jurisdiction over this matter in the first instance.  The Court must next consider
16  Defendants' argument that 8 U.S.C. § 1252(a)(2)(B)(ii) divests this Court of jurisdiction.
17            **C.  Effect of 8 U.S.C. § 1252(a)(2)(B)(ii)**
18            Plaintiff seeks to compel Defendants to expedite adjudication of this I-485
19  application.  (docket # 1)  Title 8 U.S.C. § 1255 governs the adjudication of an I-485
20  application for adjustment of status and provides that an alien's status "may be adjusted
21
22
23

24            [4] Because Plaintiff is entitled to relief under the APA, the Court could avoid reaching
25  Plaintiff's claim for relief under the Mandamus Act.  *See, Wang v. Chertoff*, 2008 WL
    681839, * (W.D.Wash., March 7, 2008) (declining to engage in separate analysis of claims
26  under 28 U.S.C. § 1361 and APA because those provisions provide "essentially the same"
27  avenues for relief); *Gelfer v. Chertoff*, No. C-06-06724-WHA, 2007 WL 902382,*3
    (N.D.Cal., March 22, 2007) (declining to address existence or lack of mandamus jurisdiction
28  due to availability of relief under APA). The Court, however, chooses to address this claim.

by the Attorney General,[5] *in his discretion* and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if: (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa  is immediately available to him at the time his application is filed."  Title 8 U.S.C. § 1255(a) (emphasis added).

Defendants argue that 8 U.S.C. § 1252(a)(2)(B)(ii) divests this Court of jurisdiction because the adjudication of an adjustment of status application is expressly committed to the discretion of the USCIS. (docket # 30 at 5)(*see*, footnote 5, *supra*) Section 1252(a)(2)(B) provides:

> Notwithstanding any other provisions of law (statutory or nonstatutory) . . . no court shall have jurisdiction to review -
>
> (i) any judgment regarding the granting of relief under section . . . 1255, or
>
> (ii) any other decision or action of the Attorney General or Secretary of Homeland Security the authority for which is specified under this subchapter
>
> [8 U.S.C. § 1151, *et seq*.] to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

8 U.S.C. § 1252(a)(2)(B).

Defendants state that although subsection (i) is inapplicable because there has not been a "judgment regarding the granting of relief" in this case, "subsection (ii), which applies broadly to "any other decision or action," precludes this Court's review of Plaintiff's claims."  (docket # 30 at 5)  Defendants contend that because "decisions or actions" – including the pace of processing an I-485 application - related to the

---

[5] Subsequent enactments have transferred authority over § 1255(a) adjustments to the Secretary of the Department of Homeland Security, and in turn to the USCIS as the Secretary's delegate. 6 U.S.C. § 271(b)(5)(transferring power from former Immigration and Naturalization Service to USCIS); 6 U.S.C. § 271 (b)(5), 6 U.S.C.§ 557; 8 C.F.R. § 245.2(a)(1)(2008).  Accordingly, the Court will refer to USCIS as the governmental entity with the power to adjust immigrant status.

1    adjustment of status fall under the discretionary authority of USCIS, they are not subject

2    to judicial review pursuant to § 1252(a)(2)(B)(ii).[6]  (docket # 30)

3         Title 8 U.S.C. § 1252(a)(2)(B)(ii) provides that courts lack jurisdiction to

4    review a "decision or action" that is "specified under [Subchapter II, Chapter 12, Title 8

5    of the United States Code, § 1151 to 1378] to be in the discretion" of the USCIS.  *Id.*

6    Section 1255(a) specifies that the authority to adjust the status of an applicant is within

7    the discretion of USCIS.  8 U.S.C. § 1255(a).  Thus, as Defendants claim, docket # 30 at

8    5, if Plaintiff were challenging USCIS's denial of his I-485 application, § 1252(a)(2)(B)

9    (i) might prohibit judicial review.[7]  Plaintiff, however, challenges USCIS's failure to

10   adjudicate his I-485 application within a reasonable time.  "Section 1255(a) is silent, as

11   are other statutes," as to whether USCIS has discretion in deciding "if and when" to

12   adjudicate adjustment applications.  *Ren v. Mueller*, No. 6:07-CV-790-Orl-19-DAB, 2008

13   WL 191010, * 5 (M.D. Fla. Jan. 22, 2008). *See also*, *Wang v. Chertoff*, 2008 WL 681839

14   (W.D. Wash. March 7, 2008).

15        Section 1252(a)(2)(B)(ii) strips this Court of jurisdiction only over acts "the

16   authority for which is *specified* under [8 U.S.C. §§ 1151-1378] to lie within the discretion

17   of the Government.  *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 688 (9th Cir.

18   2003) (quoting § 1252(a)(2)(B)(ii)) (emphasis added).  The Court must narrowly construe

19

20   _____

21        [6]  Defendants further argue that § 701(a)(2) of the APA strips this Court of

22   jurisdiction.  (docket # 30 at 9).  Title 5 U.S.C. § 701(a)(2) provides that the APA does not

23   apply to "agency action committed to agency discretion by law" or where "statutes preclude
     judicial review."   The Court need not consider this provision, because the bar in §

24   1252(a)(2)(B)(ii) applies more broadly against the exercise of jurisdiction that the APA bar.
     *See, Wang v. Chertoff*, No. C07-154RAJ, 2008 WL 681839, * 2 n. 1 (W.D.Wash., March,

25   7, 2008) (citing *ANA Int'l Inc. v. Way*, 393 F.3d 886, 890-91 (9th Cir. 2004)(noting that "any

26   determination that passes the more stringent test [under § 1252(a)(2)(B)(ii)], remaining
     subject to judicial review, also passes the lower bar of APA test.").

27        [7] The Court is not confronted with this issue, however, and does not decide whether

28   § 1252(a)(2)(B) removes jurisdiction over a denial of an I-485 application.

1    this provision and must not "'expand[] it beyond its precise language.'" *Wang*, 2008 WL

2    681839, * 3 (quoting *ANA Int'l.*, 393 F.3d at 891).   In determining whether this section

3    precludes judicial review in this case, the Court is mindful of the strong presumption in

4    favor of  judicial  review of agency actions.  *INS v. St. Cyr*, 533 U.S. 289, 298 (2001).

5             Defendants cite several district court cases in support of their argument that

6    §1252(a)(2)(B)(ii) precludes judicial review of the pace at which the Government reviews

7    adjustment-of-status applications. (docket # 30); *see e.g.*, *Grinberg v. Swancina*, 478

8    F.Supp.2d 1350, 1353 (S.D. Fla. 2007) (holding that § 1252(a)(2)(B)(ii) precludes

9    judicial review of the pace at which adjustment of status application is processed, not

10   merely USCIS's ultimate decision on the application); *Safadi v. Howard*, 466 F.Supp.2d

11   696, 698 (E.D. Va. 2006) (holding that § 1252(a)(2)(B) precludes judicial review of any

12   discretionary decision or action of USCIS, including pace at which adjustment application

13   proceeds); *Jiuru Hu v. Chertoff*, No. Civ. S-06-2805 WBS EFB, 2007 WL 1515067, * 6

14   (E.D. Cal. May 22, 2007) (pace at which USCIS adjudicates I-485 application is

15   discretionary[8]); *Li v. Chertoff*, 482 F.Supp.2d 1172, 1178 (S.D. Cal. 2007) (finding that

16   court lacked subject-matter jurisdiction over plaintiff's mandamus petition because "as

17   long as USCIS is making reasonable efforts to complete the adjudication, the pace

18   required to complete that process is committed to USCIS's discretion.").

19             Defendants specifically contend that the word "action" in § 1252(a)(2)(B)

20   (ii) refers to an "ongoing process or series of acts," and, therefore, the pace at which

21   USCIS processes I-485 applications constitutes a discretionary "action" that cannot be

22

23

24             [8] The court in *Jiuru Hu* commented that "[s]hould USCIS refuse to take any steps
25   whatsoever to resolve a LPR application or employ procedures such that no decision will
     issue, it might legitimately be said the agency's inaction was not the result of an exercise of
26   discretion at all.  The agency would then not be operating within its statutory discretion at
     all but rather abdicating its statutory duty to adjudicate applications, and under those
27   circumstances, this court could have jurisdiction to review the agency's actions.") *Jiuru Hu*,
28   2007 WL 1515067, * 4.

reviewed.  (docket # 30 at 6-8)  In support of this argument, Defendants rely on an unpublished and unsigned, 15-page minute entry, *Borisov v. Gonzales,* CV 06-8240-VBF (JWJx) (C.D. Cal., August 3, 2007) (attached to docket # 30 as Exh. 2) and *Safadi v. Howard*, 466 F.Supp.2d 696 (E.D. Va. 2006). In both cases, the district courts held that because the plain meaning of "action" means "an act or series of acts," the term "encompasses any acts or series of acts that is discretionary within the adjustment of status process . . .  including the completion of  background and security checks and the pace at which the process proceeds."  *Safadi*, 466 F.Supp.2d at 699; *Borisov*, CV 06-8240.  In other words, because the pace of adjudication is part of the "ongoing adjudication process" that comprises "action" on the part of USCIS, ergo, § 1252(a)(2)(B)(ii) barred judicial review.  *Safadi*, 466 F.Supp.2d at 699-700.

The reasoning of *Safadi* and *Borisov*, however, is neither binding on this Court nor persuasive.  These cases effectively, and illogically, hold that "inaction" is tantamount to "action."  *Kamal v. Gonzales,* No. 07C 4840, 2008 WL 597279, * 5 (N.D.Ill., March 3, 2008) (citing *Liu v. Novak*, 509 F.Supp.2d 1, 7 (D.D.C. 2007) (finding that "the argument in *Safadi* essentially finds that inaction is within the 'plain meaning' of action. The established body of administrative law though, distinguishes between the two.")).

Defendants also rely on the rationale of the *Borisov* and *Safadi* that the pace of adjudication falls under the discretion of the USCIS because Congress included no statutory time limits in § 1255(a) for the adjudication of I-485 applications.  (docket # 30 at 6-8)  Defendants argue that the absence of such temporal limits expresses Congress' intent to vest the USCIS "with complete discretion over the process of adjudicating an I-485 application.  This discretion necessarily includes not only whether to grant an adjustment, but also how and when to do so."  (docket # 30 at 6)

To preclude judicial review, however,  "'congressional intent to limit federal jurisdiction, generally, must be clear and convincing.'" *Kamal,* 2008 WL 597279,

* 5 (quoting *Iddir v. INS*, 301 F.3d 492, 496 (7th Cir. 2002)).  In this Court's view, the mere absence of a statutory time limit is insufficient evidence of Congress' intent to preclude judicial review over challenges to the adjudication of adjustment of status applications.  *See, Kamal,* 2008 WL 597279, * 5(citing *Saleem v. Keisler*, 520 F.Supp.2d 1048, 1054 (W.D. Wis. 2007) (finding that the absence of a statutory deadline for making a decision alone is not sufficient to support an inference that Congress intended to remove jurisdiction).  Numerous district courts within the Ninth Circuit and elsewhere which have addressed this specific issue overwhelmingly conclude that "[s]ection 1255(a) does not specify that the government has discretion over the pace of adjudicating I-485 applications.  Neither § 1255(a) nor any other statute provides the 'specified' discretionary authority over the pace of adjudicating applications for adjustment of status that § 1252(a)(2)(B)(ii) demands." *Wang*, 2008 WL 681839, * 3 (citing *Spencer*, 345 F.3d at 690).  Thus, these courts have held that the pace at which USCIS processes I-485 applications is nondiscretionary and that § 1252(a)(2)(B)(ii) does not bar judicial review. *See, e.g., Kamal v.Gonzales,* No. 07 C 4840, 2008 WL 597279, * 5 (N.D. Ill., March 3, 2008); *Gianni v. Curda*, No. 2:07-CV-1478-GEB-KJM, 2008 WL 479991 (E.D. Cal., Feb. 19, 2008); *Ren*, 2008 WL 191010, * 6 (holding that the "INA does not specify that the decision whether to adjudicate adjustment applications is within the discretion of the USCIS; therefore the jurisdiction stripping provision in Title 8, Section 1252(a)(2)(B)(ii) of the [USC] does not apply."); *Amirparviz v. Mukasey,* No. C07-1325RAJ, 2008 WL 313931, * 3 (W.D. Wash. Feb. 4, 2008); *Wang v. Chertoff,* No. C07-154RAJ, 2008 WL 681839 (W.D. Wash. March 7, 2008); *Liu v. Chertoff*, No. CV-06-1682-ST, 2007 WL 2435157, * 8 (D. Or. Aug. 29, 2007); *Sun v. Gonazales*, No. CV-07-180-AMJ, 2007 WL 3548280, * 4 (E.D. Wash. Nov. 15, 2007); *Dong v. Chertoff*, 513 F.Supp.2d 1158, 1163 & n. 7 (N.D. Cal. 2007) (reviewing nine prior decisions)*; Liu Duan v. Zamberry*, 2007 (W.D.Pa. 2007) (stating that "[a]lthough the speed of processing may be 'discretionary' in the sense that it is determined by choice, and that it rests on various decisions that

- 11 -

1   Defendants may be entitled to make, it is not discretionary in the manner required by the

2   jurisdiction-stripping language of the IIRIRA"); *Aboushaban v. Mueller*, No. C-06-1280-

3   BZ, 2006 WL 3041086, * 2 (N.D. Cal. 2006) (defendants have a duty to adjudicate

4   plaintiff's application and to do so within a reasonable time).

5          Although the Ninth Circuit has not addressed the precise issue before this

6   Court, it recently held that 8 U.S.C. § 1252(g) which precludes "jurisdiction to hear any

7   cause or claim by or on behalf of any alien arising from the decision or action of the

8   Attorney General to commence proceedings, adjudicate cases, or execute removal orders .

9   . . ." did not divest the Ninth Circuit of jurisdiction to review the BIA's final order of

10  removal where petitioner's challenge was based on actions taken by a corrupt

11  governmental employee "prior to any decision made by the Attorney General to

12  commence proceedings against her." *Shin v. Mukasey*, ___ F.3d___, Nos. 06-71955, 06-

13  74052, 2008 WL 564982, * 2 (9th Cir. March 4, 2008).  The statutory provisions at issue

14  in *Shin* and in this case are similar in precluding judicial review of a "decision or action"

15  of the Attorney General.  *Compare*, 8 U.S.C. § 1252(g) with 8 U.S.C. § 1252(a)(2)(B)(ii).

16  The facts in *Shin* are analogous to this case where Plaintiff, like petitioner in *Shin*,

17  challenges the events preceding a decision by the USCIS, rather than the final decision.

18  Thus, the reasoning of *Shin* applies and supports a finding that § 1252(a)(2)(B)(ii) does

19  not preclude judicial review over actions taken by governmental employees before a final

20  decision of USCIS on an I-485 application.

21          In view of the foregoing discussion, this Court follows the majority of

22  district courts within the Ninth Circuit,[9] and the vast number of district courts elsewhere,

23

24  _____

25         [9] *See Wang*, 2008 WL 681839, * 3 (noting that all of the courts within the Western

26  District of Washington and all of the courts within the Northern District of California,

27  consistent with the majority of district courts within the Ninth Circuit that have considered

    the issue have concluded that 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar review of the pace

28  of adjudication of an I-485 application.)(citing cases).

1    in holding that 8 U.S.C. § 1252(a)(2)(B)(ii) does not divest this Court of jurisdiction in

2    this matter to consider the pace at which USCIS adjudicates Plaintiff's I-485 application.

3    The "strong presumption in favor of judicial review of agency action," *I.N.S. v. St. Cyr*,

4    533 U.S. 289, 298 (2001), supports this conclusion.

5    **IV. Cross-Motions for Summary Judgment**

6            Plaintiff seeks summary judgment compelling the USCIS to adjudicate his

7    I-485 application because the delay in adjudicating that application is unreasonable.

8    Defendants filed a cross-motion for summary judgment requesting that the Court deny

9    Plaintiff's claims.

10           Summary judgment is appropriate where there is no genuine issue of

11   material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.

12   56(c).  On a motion for summary judgment, a district court draws all inferences from the

13   admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred*

14   *Meyer, Inc*., 198 F.3d 1130, 1134 (9th Cir. 2000).  The moving party bears the initial

15   burden of showing the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477

16   U.S. 317, 323 (1986).  Once the moving party has met its burden, the opposing party must

17   show that there is a genuine issue of material fact for trial. *Matsushita Elect. Indus. Co. v.*

18   *Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The opposing party must present

19   significant and probative evidence to support its claims or defense. *Intel Corp. v.*

20   *Hartford Accident & Indem. Co.*, 952 F. 2d 1551, 1558 (9th Cir. 1991).  When confronted

21   with purely legal questions, the court does not defer to the non-moving party.  The Court

22   now turns to the merits of Plaintiff's claims.

23

24           **A.  Mandamus Relief**

25           The Court first addresses Plaintiff's claim under the Mandamus Act, 28

26   U.S.C. § 1361.  Title 28 U.S.C. § 1361 grants district courts original jurisdiction of "any

27   action in the nature of mandamus to compel an officer or employee of the United States

28   or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  The

All Writs Act further provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Plaintiff seeks a writ of mandamus from this Court. (docket # 1) A district court may issue a writ of mandamus only if: (1) plaintiff has a clear right to relief; (2) defendants have a clear duty to act, and (3) no other adequate remedy is available. *Johnson v. Reilly*, 349 F.3d 1149, 1153 (9th Cir. 2003). Mandamus cannot be used to compel or review discretionary acts of governmental officials. *Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1180 (9th Cir. 1983). The Supreme Court has consistently cautioned that "the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chemical Corp. v. Daiflon, Inc*., 449 U.S. 33, 34 (1980) (citing *Will v. United States*, 389 U.S. 90, 95 (1967)); *Kerr v. U.S. Dist. Ct. N. Dist. Cal*., 426 U.S. 394, 403 (1976) (stating that "[a] judicial readiness to issue the writ of mandamus in anything less than an extraordinary situation would run the real risk of defeating the very policies sought to be furthered by that judgment of Congress.").

Defendants argue that Plaintiff's mandamus claim should be dismissed because the decision regarding the adjustment of status is a discretionary one and Plaintiff neither has a clear right to adjudication of his application within a reasonable time nor does the USCIS have a duty to adjudicate his application. (docket # 30 at 14)

### 1. Duty to Act

The Supreme Court has indicated that courts should consider "agency regulations that have the force of law" to determine whether agency action is required by law." *Norton v. S. Utah Wilderness Alliance* ("*SUWA*"), 542 U.S. 55, 65 (2004). Language in an agency's decisions or regulations may "create[] a commitment binding on the agency." *Id* at 71. "Thus, when an agency uses mandatory language like 'shall,' a court should find there is a legal duty to act." *Ren*, 2008 WL 191010, * 7 (citing *SUWA*, 542 U.S. at 65); *Singh*, 470 F.Supp.2d at 1067(noting that USCIS conceded a mandatory

- 14 -

duty to act on adjustment of immigrant status applications).  This Court agrees with Plaintiff that language in the applicable regulations indicates that USCIS has a nondiscretionary duty to process and make a decision on his adjustment of status application.  For example, Title 8 C.F.R. § 245.2(a)(5) states that "the applicant *shall* be notified of the decision of the director and, if the application is denied, the reasons for the denial."  (emphasis added).  Title 8 C.F.R. § 245.6 states that "[e]ach application for adjustment of status under this part *shall* be interviewed by an immigration officer." (emphasis added).  *See also, Saleem*, 520 F.Supp.2d at 1054 (finding that these regulations are drafted on the assumption that defendants will decide each application."); *Singh*, 470 F.Supp.2d at 1067 (indicating that regulations reflect a nondiscretionary duty to process applications for adjustment of status). *See also*, *Liu v. Chertoff*, 2007 WL 1202961, * 3; *Camerena v. Chertoff*, No. 07-C-822, 2008 WL 161481, * 3 (N.D. Ill., Jan. 16, 2008) (USCIS "has a nondiscretionary duty to adjudicate applications for adjustment of status within a reasonable time."); *He v. Chertoff*, 528 F.Supp.2d 879 (N.D. Ill. 2008) (stating that adjustment of status "applicants have a clear right to adjudication of their cases within a reasonable time."); *Agbemaple v. INS*, No. 97-8547, 1998 WL 292441, at *2 (N.D. Ill. May 18, 1998) (holding that section 1255 "provide[s] a right to an adjudication . . . [and] by necessary implication the adjudication must occur within a reasonable time. A contrary position would permit the INS to delay indefinitely.").

### 2.  Right to Relief

Defendants further argue that Plaintiff does not have a right to relief because there are no statutory deadlines for acting on I-485 applications.  (docket #  30 at 13 -14)

Plaintiff argues that § 555(b) of the APA imposes a "reasonable time" requirement for the adjudication of the I-485 application.  (docket # 1 at 4); 5 U.S.C. § 555(b) (stating that "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude

a matter presented to it." *Id.* (emphasis added).  Plaintiff argues that this "reasonable time" limitation on adjudication is nondiscretionary, and that Defendants should be compelled under the Mandamus Act to complete adjudication of his I-485 application. (docket # 27)  Additionally, § 706 of the APA provides that a "reviewing court shall (1) compel agency action unlawfully withheld or unreasonably delayed. . . ."  Under the APA, if the USCIS has unreasonably delayed the adjudication of Plaintiff's I-485 application, the APA provides Plaintiff with a clear right to relief.  *Ren*, 2008 WL 1910101, * 9 (finding that § 555(b) and § 706 of the APA obligate USCIS to adjudicate adjustment of status applications within a reasonable time).

Many district courts agree that the pace at which USCIS adjudicates I-485 applications is nondiscretionary and that mandamus jurisdiction exists over a challenge to the adjudication of an I-485 application.  *See e.g.*, *Ren,* 2008 WL 191010, * 7; *Wang*, 2008 WL 681839, * 4; *Guoping Ma v. Gonzalez*, No. C07-122RSL, 2007 WL 1655188, * 3 (W.D.Wash. June 5, 2007); *Sun*, 2007 WL 3548280, * 4 (collecting cases). Relying on the reasoning of these courts, the Court finds that Plaintiff has a right to relief.

### 3. Availability of Other Remedies

As to the third element of mandamus relief, Plaintiff has no other adequate remedy available.  Plaintiff alleges he has exhausted all administrative remedies available to him and Defendants do not dispute that he has done so.  (docket # 1)  District courts have consistently found that there is no adequate alternative remedy available to aliens seeking adjudication of adjustment of status applications.  *Ren,* 2008 WL 1910101, * 9 (citing *Konchitsky v. Chertoff*, No. 5:07cv294-RMW, 2007 WL 2070325, * 6 (N.D. Cal., July 13, 2007); *Singh*, 470 F.Supp.2d at 1071-72.  This Court cannot discern a reasonable alternative and, thus, concludes that Plaintiff has no adequate alternative remedy. Because Plaintiff has a clear right to relief, Defendants have a clear duty to act, and there are no adequate alternative remedies available to Plaintiff, this Court has jurisdiction to issue a writ of mandamus under 28 U.S.C. § 1361 against the USCIS and its officers.

**B.  Claim for Relief Under the APA**

Plaintiff alternatively seeks relief under the APA.  (docket # 1)  The APA provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  Section 706(1) of the APA authorizes a federal court to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  To be entitled to relief under the APA, Plaintiff must establish a nondiscretionary duty to act and, in the case where the challenge is for delay, must show that the delay is unreasonable.  *Norton v. S. Utah Wilderness Alliance* ("*SUWA*"), 542 U.S. 55, 63 & n. 1 (2004); 5 U.S.C. § 706(1) (authorizing courts to "compel agency action unlawfully withheld or unreasonably delayed.").  The APA, however, exempts from judicial review actions "committed to the agency discretion by law."  5 U.S.C. § 701(a).

**1.  Mandatory Duty to Act**

As previously discussed, USCIS has enacted regulations that establish its mandatory duty to act on Plaintiff's I-485 application within a reasonable time.  One such regulation declares that "an applicant *shall* be notified of the decision of the director [on an application for adjustment of status] and, if the application is denied, the reasons for the denial."  8 C.F.R. § 245.2(a)(5)(I) (emphasis added).  This regulation serves as a basis for a mandatory duty underlying Plaintiff's APA claim.  *SUWA*, 542 U.S. at 65; *Wang,* 2008 WL 681839 * 4.  Additionally, Section 555(b)'s "reasonable time" standard is a sufficient guide to review USCIS's action.  *See, Sun,* 2007 WL 3548280, * 5; *Liu*, 2007 WL 2433157, * 8 (finding that because "federal courts routinely assess the 'reasonableness' of the pace of agency action under the APA, this court believes a meaningful standard exists against which to judge defendants' actions or lack thereof" with regard to Plaintiff's I-485 application.") (citing *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1998)).  Pursuant to the APA, in conjunction with the federal

- 17 -

question statute, Plaintiff has a right to have his I-485 application adjudicated within a reasonable time.

### 2. Delay in Adjudicating Application

Having determined that USCIS has a mandatory duty to act on Plaintiff's I-485 application for adjustment of status, the Court must determine whether USCIS's delay in adjudicating Plaintiff's application has been reasonable.

The APA directs agencies to resolve I-485 applications within a reasonable time.  5 U.S.C. § 555(b).  Plaintiff alleges that Defendants violated § 555(b) of the APA, which specifically provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  As previously discussed, the Court has jurisdiction to review Defendants' failure to adjudicate Plaintiff's I-485 application under § 706(1) of the APA, which authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed."  Section 706 "leaves in the courts the discretion to decide whether agency delay is unreasonable."  *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999).  The Ninth Circuit has adopted a six-factor test for determining whether agency delay is unreasonable:

> (1) the time agencies take to make decisions must be governed by a 'rule of reason;'
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

1    *Brower v. Evans,* 257 F.3d 1058, 1068 (9th Cir. 2001) (citing *Telecomms. Research &*

2    *Action Ctr. v. F.C.C.* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (six factors referred to

3    as the "*TRAC* factors").

4                              **a.  First *TRAC* Factor**

5                The first *TRAC* factor requires that a "rule of reason" guides the agency's

6    decision making. Defendants assert that name checks are processed on a "first in, first

7    out" basis.  (Cannon Decl. ¶19)  Although the "FBI cannot provide a specific or general

8    time frame for completing any particular name check submitted by USCIS," Cannon

9    Decl. ¶ 20, [h]istorically, approximately 68 percent of the name checks submitted by

10   USCIS are electronically checked and returned to USCIS as having 'No Record' within

11   48-72 hours." (Cannon Decl. ¶ 13)  Indeed, the processing of a name check "depends

12   upon a number of factors, including where in the processing queue the name check lies;

13   the workload of the analyst processing the name check; the volume of priority checks the

14   analyst must process . . .the number of . . . possible matches that must be retrieved,

15   reviewed and resolved; the number of records from various Field Offices that must be

16   retrieved, reviewed and resolved; and more generally, the staff and resources available to

17   conduct the checks."  (*Id.*)  As a result of these numerous factors, some name checks take

18   one week, while others are still pending after years. *See, Wang*, 2008 WL 681839, * 5.

19   Thus, the "rule" appears to be that once USCIS submits a name check request to the FBI,

20   USCIS abdicates its responsibility for that name check.  *Id.*

21

22                Defendants have not provided evidence confirming that Plaintiff's

23   application has been processed in a "first in, first out" fashion, nor have they provided

24   evidence as to why the FBI needs over six years to conduct a name check on Plaintiff.

25   (Cannon Decl. ¶ 21-22); (Harrell Decl. ¶ 12)  Thus, there is no evidence that a "rule of

26   reason" is at work in this case."  *See*, *Chen*, 2007 WL 2570243, * 4 (in discussing first

27   *TRAC* factor, court found it significant that defendants provided no evidence confirming

28   that plaintiff's application was processed in a "first in, first out" manner and there was no

1   evidence why FBI needed so long to complete a name check); *Sun*, 2007 WL 3548280, *

2   8 (E.D. Wash., 2007)(same).

3                          **b.  Second *TRAC* Factor**

4                  Under the second *TRAC* factor, the Court considers any Congressional

5   expression of a "timetable or other indication of the speed with which it expects the

6   agency to proceed." *TRAC*, 750 F.2d at 80.

7                  Defendants argue that there is neither a statutory nor regulatory timetable

8   for FBI name checks for USCIS's adjudication of an application to adjust status.[10]

9   (docket # 30)  Defendants contend that in the absence of a statutory or regulatory time

10  frame, the Court should consider the factors - including the "large volumes of petitions

11  and applications," the extensive background checks," and "the limited resources

12  available" - that contribute to the backlogs faced by USCIS and the FBI.  (docket # 30 at

13  15; Cannon Decl. ¶¶ 16 -20; Harrell Decl. ¶ 8)

14                 The lack of a specific timetable does not mean that USCIS can take an

15  infinite amount of time to process Plaintiff's adjustment of status application.  *Chen*, 2007

16  WL 2570243, * 4.  Although INA contains no time frame for adjudication of adjustment

17  of status applications, "Congress sets a normative expectation and standard in 'The

18  Immigration Services and Infrastructure Improvements Act of 2000' of a reasonable

19  processing time for an immigrant benefit application as no more than 180 days after

20

21  _____

22         [10]   On February 8, 2008, USCIS released a memorandum to the field revising
23  adjudication guidance concerning adjustment of status applications.  The memorandum
    directs the field to continue to initiate FBI name checks, but revises prior guidance by
24  directing that where the application is otherwise approvable and the name check request has
    been pending for more than 180 days, the adjudicator is to approve the I-485 application and
25  proceed with card issuance.  *Interpreter Releases*, Vol. 85, No. 7, February 11, 2008.
26  Because neither party has cited this USCIS memorandum, the Court does not rely upon this
    USCIS memorandum in reaching its decision.  The Court, however, notes that it provides
27  further evidence that USCIS has a nondiscretionary duty to process I-485 applications within
28  a reasonable time.

initial application." *Liu*, 2007 2435157, * 9 (citing 5 U.S.C. § 1571 which provides "It is the sense of Congress that the processing of an immigrant benefit application should be completed not later than 180 days after the initial filing of the application . . . ."). *See also*, *Konchitsky v. Chertoff*, 2007 WL 2070325, * 4 (N.D. Cal. 2007) (citing 8 U.S.C. § 1571); *Abbasfar v. Chertoff*, No. C07-1155-PVT, 2007 WL 2409538, * 3 (N.C. Cal. 2007) ("8 U.S.C. § 1571 provides a meaningful standard for the pace of adjudication of adjustment of status applications.").

Additionally, Congress has mandated that the Attorney General "shall take such measures as may be necessary to . . . reduce the backlog in the processing of immigration benefit applications, with the objective of the total elimination of the backlog not later than one year after the enactment of this Act." 8 U.S.C. § 1573.[11]  This section also mandates that future backlogs be prevented. *Id.*

Plaintiff's application has been pending since July 1, 2002, nearly six years. Far longer than the 180-day standard set forth in 8 U.S.C. § 1571(b).

### c. Third and Fifth *TRAC* Factors

According to the third *TRAC* factor, delays affecting "health and human welfare," rather than mere economic interests, are less tolerable.  Plaintiff claims that because his I-485 application is unresolved, he "feels his immigration status is insecure and that he cannot stabilize his life." (docket # 1 at 3)  He further contends that his "immigration options . . . are all on hold because he is not a permanent resident.  The unreasonable and unjustified delay in his application for permanent resident . . . delays everything for him." (docket # 1 at 4)   As Plaintiff asserts, the delay in processing his I-

---

[11] In addition to this deadline, 8 C.F.R. § 103.2(b)(18) sets forth a detailed timetable "for withholding adjudication of a visa petition or other application if . . . an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion . . . ."  However, because neither party has cited this regulation, the Court does not rely on it in resolving the pending motions.

485 application slows the process of obtaining permanent residence and, ultimately, citizenship.  The burdens Plaintiff alleges include both economic matters and issues related to human welfare.  *See e.g., Singh v. Still*, 470 F.Supp.2d 1064, 1069 (N.D. Cal. 2006) (finding that human health and welfare are at stake in a case involving delay of an I-485 application); *Chen*, 2007 WL 2570243, * 5.

### d.  Fourth *TRAC* Factor

The fourth *TRAC* factor requires the Court to consider the effect of expediting Petitioner's application on other USCIS priorities.  USCIS contends that expedited name checks can cause delay in processing other name checks and favors applicants who are financially able to hire counsel and file mandamus actions.  (docket 30 at 15-16)   Defendants further argue that permitting immigration applicants to use mandamus to "cut in line" would "open[] the floodgates for immigration-related mandamus actions. . . [and] would shorten the delay for some, only to lengthen it for others," resulting in no net gain in processing.  (docket # 30 at 16)  Although this is a valid and fair concern, it carries little weight in this case. Plaintiff is not "cut[ting] in line," he has been patiently waiting in line for nearly six years without any indication that he is nearing the front of the line. This Court will not deny relief to Plaintiff whose application has been unreasonably delayed merely because there may be others, indigent or not, whose applications have perhaps also been unreasonably delayed.

### e.  Sixth *TRAC* Factor

Pursuant to the sixth *TRAC* factor, the Court need not find any impropriety on the agency's part to find agency action has been unreasonably delayed.  There is no evidence of an improper purpose underlying the Government's delay in this case.

In addition to the *TRAC* factors, the reasonableness of USCIS's delay must also be judged in light of the Government's justifications for the delay in processing Plaintiff's application.  *See, Fraga v. Smith*, 607 F.Supp. 517, 522 (D. Or. 1985) (stating that in considering administrative delay, in addition to the *TRAC* factors, courts should

also consider the resources which Congress has supplied the agency and the impact of the delays on the applicant's interests). Defendants argue that national security and public safety concerns mandate the use of name checks. (docket # 30 at 15)  Defendants further argue that the sheer number of name checks that the Government must process causes delays.  (docket # 30 at 15; Cannon Decl. ¶¶ 16-20; Harrell Decl. ¶ 9)

The Government's general duty to protect public safety and national security does not justify the delay in this particular case.  *See, Singh*, 470 F.Supp.2d at 1069 (finding that "mere invocation of national security is not enough to render agency delay reasonable *per se*. ")  Although these are both important and legitimate concerns, Defendants provide no specific reasons why Plaintiff's I-485 application raises either public safety or national security concerns.  (see, docket # 30; Harrell Decl. ¶ 12; Cannon Decl. ¶¶ 22-23)  Plaintiff has lived in the United States for nearly seven years.  No evidence has been provided the Court that during his nearly seven years in the United States, Plaintiff has been anything other than a law-abiding, hard-working immigrant, searching for a better life for his family and himself than they experienced in his now war-torn, former country of  Iraq. An order compelling USCIS to adjudicate Plaintiff's I-485 application does not deprive the Government of options if it discovers that Plaintiff is, in fact, a threat to national security or public safety.  *Singh*, 470 F.Supp.2d at 1070. For example, Defendants could arrest Plaintiff, initiate deportation proceedings, or move to rescind the grant of residency. *See, Sun,* 2007 WL 3548289, * 9; *Wang*, 2008 WL 681839, * 6 (citing *Singh*, 470 F.Supp.2d 1064, 1070 (noting the Government's ability to address security threats that permanent resident aliens pose).  The Government's failure to act on Plaintiff's I-485 application does not advance its concerns regarding public safety or national security.

Defendants also attempt to justify the delay in processing Plaintiff's I-485 application by citing the sheer  volume of name checks that USCIS requests.  Despite the large number of requests, USCIS processes most  I-485 applications in less than 18

months.  (Harrell Decl. 10, citing www.uscis.gov); *see also Liu*, 2007 WL 2435157, * 9 (noting that only 1% of name checks are not completed within the first 60 days).  The central issue in this case is why is Plaintiff's application is taking so long to process. Defendants' citation to the large number I-485 applications and related name checks does not provide any specific insight into why Plaintiff's application has been pending for nearly six years, well beyond the 180 days recommended by Congress and, "more importantly, well beyond the norm for USCIS."  *Liu*, 2007 WL 2431517, * 9 (noting that significant delays, particularly over uncomplicated matters, cannot be justified by assertions of overwork) (citing *Dabone v. Thornburgh*, 734 F.Supp. 195, 203 (E.D. Penn. 1990)).

        The Government does not offer any evidence that explains why Plaintiff's application has languished for nearly six years.  The lack of evidence regarding the delay in adjudicating Plaintiff's application undermines the Government's position that Plaintiff is not entitled to relief.  *See, Wang*, 2008 WL 681839, * 6; *Ren*, 2008 WL 191010, * 11)("[T]he boilerplate declaration of Mr. Cannon that describes at length the backlog in the FBI and the general problem with increased security clearance procedures in the post-9/11 world . . . does not explain why Plaintiff's application has now been pending for almost four (4) years. Absent any compelling explanation for this delay *as it relates to Plaintiff's application*, the Court cannot find this delay reasonable . . . .") (emphasis in original). Hopefully, the reason that no expedited request has been made since January 26, 2007, the date Plaintiff filed his Complaint, is a reason other than Plaintiff's exercise of his First Amendment right to seek judicial redress against his new government. *Liu*, 2007 WL 2431517, * 9 (noting that since February 2007, there may be a new USCIS policy "not to make any expedited requests simply because a lawsuit is filed, regardless of the length of the delay."). *McDonald v. Smith*, 472 U.S. 479, 482 (1985) (the right of access to the courts is an aspect of the First Amendment right to petition); *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 309-310 (1970) (citing *Kwong Hai Chew v. Colding*, 344

U.S. 590, 596 (1953) (stating that "once an alien lawfully enters and resides in this country he becomes invested with the rights guaranteed by the Constitution to all people within our borders.")).

When Plaintiff has been waiting nearly six years for adjudication but others have received decisions much more quickly, it is not sufficient for the Government to blame the delay on the system. The unexplained delay of nearly six years in this case is unreasonable. *See, Ren,* 2008 WL 191010, * 11(alleged four-year delay adequately stated claim of unreasonable delay); *Gelfer v. Chertoff,* No. C06-06724 WHA, 2007 WL 902382, * 2 (N.D. Cal. March 22, 2007(more than two-year delay not reasonable); *Chen,* 2007 WL 2570243, * 7 (more than three-year delay, without particularized explanation, is unreasonable); *Mazouchi v. Still,* No. C-06-07915-RMW, 2007 WL 2070324, * 4-5 (N.D. Cal., July 13, 2007) (four-year delay in completing FBI name check and adjudicating I-485 application held unreasonable); *Konchitsky*, 2007 WL 2070325, * 6 (in the absence of "a particularized explanation for the delay . . . more than two years delay of plaintiff's application [is] unreasonable as a matter of law."); *Liu*, 2007 WL 2023548, * 4 (E.D. Cal. 2007) (two-and-a-half year delay not reasonable, indicating that a lack of "a more particular explanation by Defendants as to the cause of the delay," despite evidence of large volume of applications received and extensive background checks required to process them.); *Huang v. Chertoff*, No C07-0277 JF, 2007 WL 1831105, * 2 (N.D. Cal. June 25, 2007) (despite national security concerns and increased security checks since 9/11, more than two-year delay is unreasonable as a matter of law if there is no particular explanation as to cause of the delay); *Singh*, 470 F.Supp.2d at 1069 (noting that "the mere invocation of national security is not enough to render agency delay reasonable per se"); *Han Cao v. Upchurch*, 496 F.Supp.2d 569, 577 (E.D. Pa. 2007)(four-year delay presumptively unreasonable); *Elkhatib v. Bulter*, No. 04-22407-CIV, 2005 WL 5226742, * 2 (S.D. Fla. June 7, 2005) (four-year delay unreasonable);

1    In accordance with the foregoing facts and law, the Court concludes that

2   jurisdiction is proper under the APA and 28 U.S.C. § 1331 to compel USCIS to

3   adjudicate Plaintiff's application for adjustment of status which has been pending for

4   nearly six years.

5   **V.  Conclusion**

6    The Court has subject-matter jurisdiction over Plaintiff's claims pursuant to

7   the Mandamus Act, 28 U.S.C. 1361, and under 28 U.S.C. § 1331 in conjunction with the

8   APA.  Based on the absence of a genuine dispute as to any issue of material fact and in

9   view of the lack of any explanation for the delay relating specifically to the processing of

10  Plaintiff's application for adjustment of status, the Court finds that the nearly six-year

11  delay in adjudicating Plaintiff's I-485 application is unreasonable.  As a result, Plaintiff is

12  entitled to summary judgment.

13   Accordingly,

14   **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment, docket #

15  27, is **GRANTED** and that Defendants' Cross Motion for Summary Judgment, or in the

16  alternative, Motion to Dismiss, docket # 30, is **DENIED**.

17   **IT IS FURTHER ORDERED** that Defendants shall complete the

18  adjudication of Plaintiff's I-485 application within **sixty (60) days** from the date of this

19  Order.

20   Dated this 7th day of April, 2008.

21

22

23

24                    Lawrence O. Anderson
                  United States Magistrate Judge
25

26

27

28

- 26 -